UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN KING, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:15-cv-10498-IT |
| | * | |
| COVIDIEN PLC and | * | |
| JOSE E. ALAMEIDA, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

May 4, 2016

TALWANI, D.J.

After the court allowed Defendants' motion to dismiss Plaintiff Brian King's state law claims, Memorandum & Order [#31], King moved for leave to amend. Mot. Leave Amend Compl. State Claims Under ERISA [#34]. Finding the proposed amendment futile, the motion is DENIED.

    I.      Legal Standard

In determining whether filing an amended complaint would be futile, the court "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). Thus, a motion to amend may be granted if it contains sufficient factual material "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). A court construes the well-pleaded facts in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108 (1st Cir. 2014).

1

II.     Discussion

King seeks to assert a cause of action under § 510 of the Employment Retirement Income Security Act ("ERISA") for interference with the attainment of benefits under an ERISA plan, and a cause of action under § 502(a)(3) of ERISA for breach of fiduciary duty.  King has not provided a copy of a proposed pleading.  His motion for leave to amend does, however, suggest the proposed pleading would contain all of the same factual allegations as his First Amended Complaint [#16], with the additional allegation that Defendant Jose Almeida ("Almeida") insisted that King leave the Covidien premises by noon on May 2, 2014, the day that Medtronic management were present to meet with Covidien management about the merger.  See Pl.'s Mem. Law Supp. Mot. Leave Amend 5 & n.11 [#35].

A.   Cause of Action under § 510 of ERISA

King alleges that Defendants interfered with his attainment of benefits under Covidien's Change in Control Plan and Severance Plan.  Section 510 of ERISA makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan] . . . ."  29 U.S.C. § 1140.  To state a prima facie claim for § 510 interference, King must allege "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which [he] might become entitled" under an ERISA employee benefit plan.  Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996).  King must therefore allege some "prohibited conduct" by an employer, Roush v. Weastec, Inc., 96 F.3d 840, 845 (6th Cir. 1996), taken with "the specific intent of interfering with [his] ERISA benefits," Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 330 (1st Cir. 1996) (quotation marks and citation omitted).

As to the first requirement, the statute specifically makes it unlawful "to discharge, fine, suspend, expel, discipline, or discriminate" against an employee. 29 U.S.C. § 1140. King points to no authority holding that a failure to disclose information about a potential merger amounts to such "prohibited conduct" covered by § 510. King does assert that when an employer fails to disclose or misrepresents facts "material to the employee's decision" to resign, this may amount to conduct prohibited by § 510 where the employee actually does resign. The cases King cites in support of this position, however, involved employer conduct amounting to constructive terminations. In <u>Maez v. Mountain States Telephone & Telegraph, Inc.</u>, the Tenth Circuit found the employees' allegations that the employer "direct[ed] a campaign of misrepresentations calculated to coerce acceptance of [a severance pay plan]" and had "purposely deceived" the employees into accepting the plan, to amount to a "constructive discharge" sufficient to state a claim under § 510. 54 F.3d 1488, 1502-03 (10th Cir. 1995). Similarly, in <u>Flanagan v. Allstate Insurance Company</u>, the court found that the plaintiffs had alleged that "employment conditions were so onerous as to constitute constructive discharge" where the employees alleged that the employer had "formulated a program of employee harassment, including cutting office expense reimbursement, requiring extended hours, requiring a licensed insurance producer to be present at all times, setting unrealistic contact and sales quotas, threatening termination, and requiring the execution of unnecessary and time-consuming tasks." 213 F. Supp. 2d 862, 865, 869 (N.D. Ill. 2001).[1]

---

[1] While the employees in <u>Flanagan</u> also alleged that they were not told, when they were discussing their resignations with management, that a new beneficial severance plan was being developed, this allegation formed the basis of their breach of fiduciary claim, not their claim under § 510, as King's memorandum suggests. See <u>Flanagan</u>, 213 F. Supp. 2d at 866-68.

Here, as the court noted in its prior Memorandum & Order [#31] and in contrast to Maez and Flanagan, King alleges no misrepresentation about the likelihood of a merger affecting his benefits under the plans, let alone a "campaign" of misrepresentations, or a "program" of any other conduct that could plausibly be considered a constructive termination.  See Mem. & Order 15-17 [#31].  Rather, King alleges that he chose to leave Covidien on realizing that his concerns about nepotism would not be addressed.  Defendants' failure to tell King about the contemplated merger while he was making this decision does not amount to a "constructive" discharge or any other conduct prohibited by § 510.

Though King's memorandum does not purport to base his proposed § 510 claim on Defendants' acceleration of his departure date, Defendants assert categorically that such an acceleration is also not "prohibited conduct" under § 510.  But if an employer accelerates a departure date in order to deprive an employee of benefits that would come due before the employee's desired departure date, such action may well constitute prohibited conduct under the statute.  Nonetheless, those are not the facts alleged here, where King would not have been entitled to any benefits under either plan had Covidien permitted him to stay until his intended departure date.  Though King suggests he is likely to have learned of the merger in the period between his desired and accelerated departure date and may then have sought to rescind his resignation, he cites no authority to suggest that, had Defendants refused to let him rescind, that action would have amounted to "prohibited conduct" under § 510.  See LeBeau v. Comm'r of Dep't of Emp't & Training, 664 N.E.2d 21, 24 n.6 (Mass. 1996) (noting that "[a] majority of

4

courts that have considered th[e] issue are in accord" that an employee is not involuntarily terminated when an employer disallows him from withdrawing a voluntary resignation). [2]

Accordingly, King has not alleged the prohibited conduct necessary for his § 510 claim.

In addition, even if Defendants had engaged in "prohibited conduct," King fails to allege that they did so with the required "specific intent of interfering with [his] ERISA benefits." Lehman, 74 F.3d at 330. As discussed in the court's Memorandum & Order [#31], King does not allege that Defendants knew or should have known that he was contemplating leaving Covidien, and therefore does not allege that they supplied false or misleading information for the purpose of getting him to resign and making him ineligible for benefits under the ERISA plans. See Mem. & Order 17-19 [#31]. Thus, King's § 510 cause of action fails for this reason as well. Lehman, 74 F.3d at 330-31 ("ERISA provides no relief if the loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action.")

Accordingly, King's proposed cause of action for interference under § 510 of ERISA fails to state a claim and this amendment would be futile.

B. Cause of Action under § 502(a)(3) of ERISA

Section 502(a)(3) of ERISA empowers an ERISA plan participant to bring a civil action for breach of fiduciary duty. 29 U.S.C. § 1132(a)(3). Defendants first argue that King fails to

---

[2] Moreover, the suggestion that King would have sought to rescind his resignation had he been permitted to stay until his intended termination date and then learned of the merger is implausible in light of King's allegation that he had already accepted employment with another firm and exercised his vested options before tendering his resignation. First Am. Compl. ¶¶ 52-53, 68 [#16]. Similarly, the contention that King would have been entitled to benefits under either plan had he remained at the company through the merger is also highly speculative. See Lampron v. Group Life Ins. & Disability Plan of Un. Tech. Corp., No. 2:12-cv-197-GZS, 2013 WL 2237851 at *3 (D. Me. May 21, 2013) ("Lampron presents pure speculation that he may have been entitled to benefits at some unarticulated point in the future. Such speculation is not sufficient to state a claim under section 510 of ERISA.") (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995)).

allege that either Almeida or Covidien are fiduciaries of either ERISA plan.  ERISA fiduciaries include "the persons named as fiduciaries by a benefit plan, 29 U.S.C. § 1102(a), [and] also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see [29 U.S.C.] § 1002(21)(A) . . . ."  Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993).  "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)."  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).

Officers, employees, and directors of a company are only ERISA fiduciaries "to the extent" they exercise the discretionary control or authority required by statute.  See 29 C.F.R. § 2509.75-8, D-4, D-5 ("Members of the board of directors [and officers and employees] of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of [ERISA]."); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (upholding dismissal of breach of fiduciary duty claims against company officials where neither official exercised discretion over the plans and were therefore not fiduciaries of the plans).  Similarly, while a company may serve as both an ERISA plan sponsor and the plan's administrator, its "fiduciary duties under ERISA are implicated only when it acts in the latter capacity."  Beck v. PACE Intern. Union, 551 U.S. 96, 101 (2007); see also Beddall, 137 F.3d at 18, 20 (stating that responsibility for "mechanical administrative responsibilities" does not transform an actor into a fiduciary); Plumb v. Fluid Pump Service Inc., 124 F.3d 849, 854 (7th Cir. 1989) ("In assessing whether a person can be held liable for breach of fiduciary duty, a court must ask whether [that] person is a fiduciary with respect to the particular activity at issue.") (quotation marks and citation omitted).

King alleges no facts regarding Almeida's or Covidien's discretionary authority or control over the Change in Control or Executive Severance Plans. Accordingly, his complaint fails to plausibly allege a breach of fiduciary by either defendant.

Moreover, even if King had established that both Defendants are fiduciaries of the ERISA plans, "[a] failure to inform is a fiduciary breach only where the fiduciary 'knew of the confusion [detrimental to the participant] generated by its misrepresentation or its silence.'" Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 115 (1st Cir. 2002) (quoting UAW v. Skinner Engine Co., 188 F.3d 130, 148 (3d Cir. 1999)). As noted above and in the court's prior Memorandum & Order [#31], King has not alleged that either Defendant knew he was contemplating leaving Covidien, and as a result, King has not alleged that either Defendant knew of the confusion generated by any failure to disclose the upcoming merger.

Accordingly, King's proposed cause of action for breach of fiduciary duty fails to state a claim and amendment would be futile.[3]

III. Conclusion

King's Motion for Leave to Amend Complaint to State Claims under ERISA [#34] is DENIED.

IT IS SO ORDERED.

Date: May 4, 2016

/s/ Indira Talwani
United States District Judge

---

[3] Because the court concludes both proposed causes of action fail to state a claim, the court does not reach Defendants' further argument that King has failed to exhaust his administrative remedies.

7